**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **MATTHEW HENDERSON**, on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>**ONEBLOOD, INC.,**<br><br>                    Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Matthew Henderson ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant OneBlood, Inc. ("OneBlood" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

**NATURE OF ACTION**

1.      This class action arises from OneBlood's failure to protect highly sensitive data.

2.      OneBlood is a non-profit that collects, processes, and distributes blood and blood products to hospitals and patients[1] in Florida, Alabama, Georgia, and the Carolinas.[2]

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") about its current, former, and prospective donors and patients of affiliated

---

[1] About, OneBlood, https://www.oneblood.org/about-us.html (last visited Jan. 16, 2025).
[2] Locations, OneBlood, https://www.oneblood.org/our-impact/locations/florida.html (last visited Jan. 16, 2025).

hospitals and patients of affiliated hospitals. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4. Upon information and belief, the victims of the Data Breach included Defendant's current, former, and prospective donors and patients of affiliated hospitals.

5. Defendant's breach differs from typical data breaches because it affects individuals who had no relationship with OneBlood and never consented to OneBlood collecting and storing their information.

6. According to Defendant's Breach Notice, on or about July 28, 2024, Defendant discovered that it was the target of a cyberattack that occurred between July 14, and July 29, 2024. In other words, OneBlood had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current, former, and prospective donors' and patients' of affiliated hospitals PII.

7. On information and belief, cybercriminals were able to breach OneBlood's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII. In short, OneBlood's failures placed the Class's PII in a vulnerable position—rendering them easy targets for cybercriminals.

8. Plaintiff is a Data Breach victim, having received a breach notice—a copy of Plaintiff's Breach Notice is attached as Exhibit A. He brings this class action on behalf of himself, and all others harmed by OneBlood's misconduct.

9. The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before this data breach, its donors' and prospective donors' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

2

## PARTIES

10.      Plaintiff, Matthew Henderson, is a natural person and citizen of Florida. He resides in Pensacola, Florida where he intends to remain.

11.      Defendant, OneBlood, Inc. is a Florida Not for Profit Corporation with its principal place of business at 8669 Commodity Circle, Orlando, FL 32819.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. OneBlood and at least one class memeber are citizens of different states. And there are over 100 putative Class members.

13.      This Court has personal jurisdiction over OneBlood because it is headquartered in Florida, regularly conducts business in Florida, and has sufficient minimum contacts in Florida.

14.      Venue is proper in this Court because OneBlood's principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## BACKGROUND

### OneBlood Collected and Stored the PII of Plaintiff and the Class

15.      OneBlood provides products to over 250 hospitals and has donation sites throughout Florida, Georgia, Alabama, and the Carolinas.[3] In, 2022, Defendant reported that its total revenues were $397,472,893.[4]

---

[3] Hospital Partners, OneBlood, https://www.oneblood.org/our-impact/hospital-partners.html (last visited Jan. 16, 2025).
[4] Financials & Governance, OneBlood, https://www.oneblood.org/content/dam/oneblood/corporate/documents-

3

16.     As part of its business, OneBlood receives and maintains the PII of thousands of its current, former, and prospective donors and patients of affiliated hospitals.

17.     In collecting and maintaining the PII, OneBlood agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII.

18.     Under state and federal law, businesses like OneBlood have duties to protect its current, former, and prospective donors' and patients' of affiliated hospitals PII and to notify them about breaches.

19.     OneBlood recognizes these duties, declaring in its "Privacy Policy" that:

    a.    "OneBlood [] is committed to maintaining robust privacy protections for its users;"

    b.    "Except as otherwise stated in this Privacy Policy, we do not sell, trade, rent or otherwise share for marketing purposes your Personal Information with third parties without your consent;"

    c.    "We implement security measures designed to protect your information from unauthorized access;"

    d.    "We further protect your information from potential security breaches by implementing certain technological security measures including encryption, firewalls and secure socket layer technology."[5]

---

/2022%20Form%20990%20-%20OneBlood%20Inc%20-%20Public%20Disclosure%20-signed.pdf (last visited Jan. 16, 2025).

[5] Privacy Policy, OneBlood, https://www.oneblood.org/privacy-policy.html (last visited Jan. 16, 2025).

20.     Further, in Defendant's "Donor Bill of Rights," it states that "OneBlood is committed to treating our valued blood donors with respect, courtesy and professionalism" and promises that all donors have the right "to be assured that information about their blood donations is kept confidential to the extent provided by law."[6]

21.     Despite recognizing its duty to do so, on information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect current, former, and prospective donors' and patients' of affiliated hospitals PII or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to current, former, and prospective donors' and patients' of affiliated hospitals PII.

**OneBlood's Data Breach**

22.     On or about July 28, 2024, "became aware of suspicious activity within its network" resulting in the exposure of current, former, and prospective donors and patients of affiliated hospitals information, including their names and Social Security numbers. Ex. A.

23.     This Data Breach forced Defendant to use manual processes and procedures that were considerably more time-consuming, and in turn Defendant's operations were at a significantly reduced capacity.[7] As a result, hospitals served by Defendant were forced to implement blood shortage protocols until Defendant's systems were secured.[8]

24.     Defendant's internal investigation revealed that the Data Breach occurred between July 14 and July 29, 0224. Ex. A. Thus cybercriminals had unfettered access to peruse and

---

[6] Donor Bill of Rights, OneBlood, https://www.oneblood.org/about-us/donor-bill-of-rights.html (last visited Jan. 16, 2025).
[7] OneBlood Notifies Individuals Affected by July 2024 Ransomware Attack, The HIPAA Journal, https://www.hipaajournal.com/oneblood-ransomware-attack/ (last visited Jan. 16, 2025).
[8] *Id.*

5

exfiltrate PII from Defendant's systems for *sixteen days* before Defendant detected the Data Breach. In other words, OneBlood had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current, former, and prospective donors' and patients' of affiliated hospitals PII.

25.     Worryingly, cybercriminals not only accessed Defendant's system but also *stole* individuals' PII as suggested by Defendant's statement that "certain files and folders were *copied* from our network without authorization." Ex. A.

26.     And yet, OneBlood waited until January 9, 2025, before it began notifying the class—more than an *five months* after it discovered the Data Breach. Ex. A.

27.     Thus, OneBlood kept the Class in the dark—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

28.     And when OneBlood did notify Plaintiff and the Class of the Data Breach, OneBlood acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, encouraging Plaintiff and the Class to:

    a.     "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your free credit reports for suspicious activity;"

    b.     "review the provided information on steps you can take to protect personal information;" and

    c.     "enroll in identity protection services." Ex. A.

29.     OneBlood failed its duties when its inadequate security practices caused the Data Breach. In other words, OneBlood's negligence is evidenced by its failure to prevent the Data

6

Breach and stop cybercriminals from accessing the PII. And thus, OneBlood caused widespread injury and monetary damages.

30.    On information and belief, OneBlood failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures.

31.    It is unknown how many individuals were impacted by the Data Breach, however upon information and belief, the victims include OneBlood's current, former, and prospective donors and patients of affiliated hospitals.

32.    Further, the Notice of Data Breach shows that OneBlood cannot—or will not— determine the full scope of the Data Breach, as OneBlood has been unable to determine precisely how the breach occurred and why it took Defendant *almost six months* to notified affected individuals.

33.    OneBlood has done little to remedy its Data Breach. OneBlood has offered victims credit monitoring and identity related services. However, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that OneBlood inflicted upon them.

34.    Because of OneBlood's Data Breach, the PII of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

35.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

7

36.     It is suspected that the notorious "RansomHub" threat actor was behind Defendant's Data Breach.[9]

37.     Notably, "RansomHub distinguishes itself through a highly lucrative affiliate program, offering partners up to 90% of ransom payments, making it one of the most attractive RaaS platforms. Affiliates are bound by strict policies requiring adherence to negotiated agreements with victims, with noncompliance resulting in permanent bans. This structured approach underscores RansomHub's commitment to maintaining a reliable operational model."[10]

38.     According to The HIPAA Journal, "RansomHub has no qualms about conducting attacks on healthcare organizations and has recently attacked the Rite Aid pharmacy chain, the Florida Department of Health, American Clinical Solutions (ACS) in Florida, the Baim Institute for Clinical Research in Boston, and the UK-based independent living aid manufacturer NRS Healthcare."[11]

39.     And as the Harvard Business Review notes, such "[c]ybercriminals frequently use the Dark Web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[12]

40.     Thus, on information and belief, Plaintiff's and the Class's stolen PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

---

[9] Nonprofit OneBlood Notifies Individuals Impacted by Ransomware Attack, Halcyon, https://www.halcyon.ai/attacks-news/nonprofit-oneblood-notifies-individuals-impacted-by-ransomware-attack (last visited Jan. 16, 2025).

[10] *Id.*

[11] OneBlood Notifies Individuals Affected by July 2024 Ransomware Attack, The HIPAA Journal, https://www.hipaajournal.com/oneblood-ransomware-attack/ (last visited Jan. 16, 2025).

[12] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

*Plaintiff's Experiences and Injuries*

41.     Plaintiff Matthew Henderson is a Data Breach victim having received a Breach Notice on or about January 9, 2025.

42.     Thus, on information and belief OneBlood obtained and maintained Plaintiff's PII.

43.     As a result, Plaintiff was injured by OneBlood's Data Breach.

44.     Plaintiff has never donated blood with Defendant, and is unsure why Defendant was maintaining his PII. However on information and belief, Plaintiff attempted to donate blood with another blood donation organization, CSL Plasma, in or around 2013 or 2014. Additionally, Plaintiff is a patient at hospitals affiliated with Defendant.

45.     OneBlood used Plaintiff's PII to facilitate its services.

46.     Plaintiff reasonably understood that a portion of the funds generated by blood donations or payments from affiliate hospitals would be used to pay for adequate cybersecurity measures.

47.     Plaintiff trusted the company would use reasonable measures to protect his PII according to OneBlood's internal policies, as well as state and federal law. OneBlood obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

48.     Thus, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

49.     Through its Data Breach, OneBlood compromised Plaintiff's name and Social Security number. Ex. A.

9

50.     Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, OneBlood directed Plaintiff to take those steps in its breach notice.

51.     Indeed, Plaintiff has already spent several hours placing fraud alerts on his accounts, freezing his credit, dealing with spam callers, and putting a lock on his credit.

52.     Plaintiff fears for the security of his PII and worries about what information was exposed in the Data Breach.

53.     Because of OneBlood's Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

54.     Plaintiff suffered actual injury from the exposure and theft of his PII—which violates his rights to privacy.

55.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and medical identity theft—all because OneBlood's Data Breach placed Plaintiff's PII right in the hands of criminals.

56.     Indeed, following the Data Breach, Plaintiff began experiencing a substantial increase in spam and scam phone calls and text messages, suggesting that his PII has been placed in the hands of cybercriminals.

57.     In one instance, Plaintiff received a call that falsely purported that he owed a $2,054.11 debt to a company called "CFR" and the caller attempted to collect this money from Plaintiff by stating his name, date of birth, and last four digits of his Social Security number.

10

Additionally, "CFR" attempted to send him emails on the matter to email addresses Plaintiff has not used in over ten years.

58.     Further, Plaintiff has been receiving spam and scam calls from several other actors purporting to be Comcast and Instant Tax Resolution, LLC.

59.     On information and belief, Plaintiff's phone number was compromised as a result of the Data Breach, as cybercriminals are able to use an individual's PII that is accessible on the dark web, as Plaintiff's is here, to gather and steal even more information.

60.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

61.     Today, Plaintiff has a continuing interest in ensuring that his PII—which, upon information and belief, remains backed up in OneBlood's possession—is protected and safeguarded from additional breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

62.     Because of OneBlood's failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

      a.     loss of the opportunity to control how their PII is used;

      b.     diminution in value of their PII;

      c.     compromise and continuing publication of their PII;

      d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII; and

h. continued risk to their PII—which remains in OneBlood's possession—and is thus as risk for futures breaches so long as OneBlood fails to take appropriate measures to protect the PII.

63. Stolen PII is one of the most valuable commodities on the criminal information black market.

64. Because of the value of its collected and stored data, the medical industry has experienced disproportionally higher numbers of data theft events than other industries.

65. Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[13]

66. The HIPAA Journal article goes on to explain that patient records, like those stolen from OneBlood, are "often processed and packaged with other illegally obtained data to create full record sets (the previously mentioned Fullz package) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other

---

[13] *Id.*

criminals and "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[14]

67. Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully can ward off a potential attack.

68. In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[15]

69. These significant increases in attacks to companies, particularly those in the healthcare industry, and attendant risk of future attacks, is widely known to the public and to anyone in that industry, including Defendant OneBlood.

70. Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

71. It is incorrect to assume that reimbursing a victim for a financial loss due to fraud makes that individual whole again. Similar to the GAO's study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for

---

[14] *Id.*
[15] https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Jan. 13, 2025).

fraudulent purposes, about a third (32%) spent a month or more resolving problems."[16] In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims."[17]

72.    As the fraudulent activity resulting from the Data Breach may not come to light for years, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

***OneBlood Knew—Or Should Have Known—of the Risk of a Data Breach***

73.    OneBlood's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

74.    In 2021, a record 1,862 data breaches occurred, exposing approximately 293,927,708 sensitive records—a 68% increase from 2020.[18]

75.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[19]

76.    OneBlood's Data Breach follows a number of high-profile data breaches of US healthcare providers. This includes the Change Healthcare ransomware attack in February, 2024,

---

[16] https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (last visited Jan. 13, 2025).
[17] *Id.*
[18]  *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[19] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

which has led to more than 100 million Americans' personal data being breached and a ransomware attack on Ascension in May in resulted in 5.6 million individuals having their sensitive personal, medical and financial information breached.[20]

77.    Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in OneBlood's industry, including Defendant.

***OneBlood Failed to Follow FTC Guidelines***

78.    According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

79.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[21]  The FTC declared that, *inter alia*, businesses must:

        a.    protect the personal customer information that they keep;

        b.    properly dispose of personal information that is no longer needed;

        c.    encrypt information stored on computer networks;

        d.    understand their network's vulnerabilities; and

        e.    implement policies to correct security problems.

80.    The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

---

[20] https://www.infosecurity-magazine.com/news/OneBlood-breach-patient-data/ (last visited Jan. 13, 2025).

[21] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

81.  Furthermore, the FTC explains that companies must:

    a.  not maintain information longer than is needed to authorize a transaction;

    b.  limit access to sensitive data;

    c.  require complex passwords to be used on networks;

    d.  use industry-tested methods for security;

    e.  monitor for suspicious activity on the network; and

    f.  verify that third-party service providers use reasonable security measures.

82.  The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

83.  In short, OneBlood's failure to use reasonable and appropriate measures to protect against unauthorized access to its current, former, and prospective donors and patients of affiliated hospitals data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***OneBlood Failed to Follow Industry Standards***

84.  Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

16

85.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

86.     Upon information and belief, OneBlood failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04).

87.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, OneBlood opened the door to the criminals—thereby causing the Data Breach.

## CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII was compromised in the Data Breach including all those individuals who received notice of the breach.

89.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which OneBlood has a controlling interest, any OneBlood officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

90.     Plaintiff reserves the right to amend the class definition.

91.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

92.     Ascertainability. All members of the proposed Class are readily ascertainable from information in OneBlood's custody and control. After all, OneBlood already identified some individuals and sent them data breach notices.

93.     Numerosity. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least thousands of members.

94.     Typicality. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

95.     Adequacy. Plaintiff will fairly and adequately protect the proposed Class's common interests. his interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

96.     Commonality and Predominance. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

        a.      if OneBlood had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII;

18

b.    if OneBlood failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.    if OneBlood were negligent in maintaining, protecting, and securing PII;

d.    if OneBlood breached contract promises to safeguard Plaintiff and the Class's PII;

e.    if OneBlood took reasonable measures to determine the extent of the Data Breach after discovering it;

f.    if OneBlood's Breach Notice was reasonable;

g.    if the Data Breach caused Plaintiff and the Class injuries;

h.    what the proper damages measure is; and

i.    if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

97.    Superiority. A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against OneBlood would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of

scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

98.    Plaintiff incorporates by reference paragraphs 1–97 as if fully set forth herein.

99.    Plaintiff and the Class entrusted their PII to OneBlood on the premise and with the understanding that OneBlood would safeguard their PII, use their PII to provide services only, and/or not disclose their PII to unauthorized third parties.

100.    OneBlood owed a duty of care to Plaintiff and Class members because it was foreseeable that OneBlood's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII in a data breach. And here, that foreseeable danger came to pass.

101.    OneBlood has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if their PII was wrongfully disclosed.

102.    OneBlood owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom OneBlood knew or should have known would suffer injury-in-fact from OneBlood's inadequate security practices. After all, OneBlood actively sought and obtained Plaintiff and Class members' PII.

103.    OneBlood owed—to Plaintiff and Class members—at least the following duties to:

   a.    exercise reasonable care in handling and using the PII in its care and custody;

   b.    implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

20

c.      promptly detect attempts at unauthorized access;

d.      notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII.

104.     Thus, OneBlood owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

105.     OneBlood also had a duty to exercise appropriate clearinghouse practices to remove PII it was no longer required to retain under applicable regulations.

106.     OneBlood knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

107.     OneBlood's duty to use reasonable security measures arose because of the special relationship that existed between OneBlood and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted OneBlood with their confidential PII, a necessary part of obtaining services from Defendant.

108.     Under the FTC Act, 15 U.S.C. § 45, OneBlood had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff and Class members' PII.

109.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII entrusted to it. The FTC

21

publications and orders promulgated pursuant to the FTC Act also form part of the basis of OneBlood's duty to protect Plaintiff and the Class members' sensitive PII.

110. OneBlood violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. OneBlood's conduct was particularly unreasonable given the nature and amount of PII OneBlood had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

111. The risk that unauthorized persons would attempt to gain access to the PII and misuse it was foreseeable. Given that OneBlood hold vast amounts of PII, it was inevitable that unauthorized individuals would attempt to access OneBlood's databases containing the PII — whether by malware or otherwise.

112. PII is highly valuable, and OneBlood knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

113. OneBlood improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

114. OneBlood breached these duties as evidenced by the Data Breach.

115. OneBlood acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII by:

a. disclosing and providing access to this information to third parties and

22

b.      failing to properly supervise both the way the PII was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

116.    OneBlood breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

117.    OneBlood further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

118.    OneBlood has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

119.    As a direct and traceable result of OneBlood's negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

120.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

121.    OneBlood's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII by criminals, improper disclosure of their PII, lost benefit of their bargain, lost value of their PII, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted

23

from and were caused by OneBlood's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

122.    Plaintiff incorporates by reference paragraphs 1–97 as if fully set forth herein.

123.    Plaintiff and Class members (or their third party agents) were required to provide their PII to OneBlood as a condition of receiving services provided by Defendant. Plaintiff and Class members (or their third party agents) provided their PII to OneBlood in exchange for OneBlood's services.

124.    Plaintiff and Class members reasonably understood that a portion of the funds generated by their donations or payments would be used to pay for adequate cybersecurity measures.

125.    Plaintiff and Class members reasonably understood that OneBlood would use adequate cybersecurity measures to protect the PII that they were required to provide based on OneBlood's duties under state and federal law and its internal policies.

126.    Plaintiff and the Class members (or their third party agents) accepted OneBlood's offers by disclosing their PII to OneBlood in exchange for services.

127.    In turn, and through internal policies, OneBlood agreed to protect and not disclose the PII to unauthorized persons.

128.    In its Privacy Policy, OneBlood represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

24

129. Implicit in the parties' agreement was that OneBlood would provide Plaintiff and Class members with prompt and adequate notice of all unauthorized access and/or theft of their PII.

130. After all, Plaintiff and Class members would not have entrusted their PII to OneBlood in the absence of such an agreement with Defendant.

131. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

132. The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

133. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

134. OneBlood materially breached the contracts it entered with Plaintiff and Class members by:

    a.    failing to safeguard their information;

    b.    failing to notify them promptly of the intrusion into its computer systems that compromised such information.

    c.    failing to comply with industry standards;

d.      failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.      failing to ensure the confidentiality and integrity of the electronic PII that OneBlood created, received, maintained, and transmitted.

135.   In these and other ways, OneBlood violated its duty of good faith and fair dealing.

136.   OneBlood's material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

137.   And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

138.   Plaintiff and Class members performed as required under the relevant agreements, or such performance was waived by OneBlood's conduct.

### THIRD CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

139.   Plaintiff incorporates by reference paragraphs 1–97 as if fully set forth herein.

140.   Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

141.   OneBlood owed a duty to its current, former, and prospective donors and patients of affiliated hospitals, including Plaintiff and the Class, to keep this information confidential.

142.   The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' PII is highly offensive to a reasonable person.

143.   The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class disclosed their sensitive and confidential information to Defendant, but did

so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

144.    The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

145.    OneBlood acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

146.    OneBlood acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

147.    Acting with knowledge, OneBlood had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

148.    As a proximate result of OneBlood's acts and omissions, the private and sensitive PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages (as detailed *supra*).

149.    And, on information and belief, Plaintiff's PII has already been published—or will be published imminently—by cybercriminals on the Dark Web.

150.    Unless and until enjoined and restrained by order of this Court, OneBlood's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII are still maintained by OneBlood with their inadequate cybersecurity system and policies.

151.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to OneBlood's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end OneBlood's inability to safeguard the PII of Plaintiff and the Class.

152.    In addition to injunctive relief, Plaintiff, on behalf of himself and the other Class members, also seeks compensatory damages for OneBlood's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

153.    Plaintiff incorporates by reference paragraphs 1–97 as if fully set forth herein.

154.    This claim is pleaded in the alternative to the breach of implied contract claim.

155.    Plaintiff and Class members conferred a benefit upon Defendant. After all, OneBlood benefitted from using their PII, their donations, and payments to provide services.

156.    OneBlood appreciated or had knowledge of the benefits it received from Plaintiff and Class members.

157.    Plaintiff and Class members reasonably understood that OneBlood would use adequate cybersecurity measures to protect the PII that they were required to provide based on OneBlood's duties under state and federal law and its internal policies.

158.    OneBlood enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII.

159.    Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, OneBlood instead calculated to avoid its data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures.

Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of OneBlood's failure to provide the requisite security.

160.    Under principles of equity and good conscience, OneBlood should not be permitted to retain the full value of Plaintiff's and Class members' PII and donations because OneBlood failed to adequately protect their PII.

161.    Plaintiff and Class members have no adequate remedy at law.

162.    OneBlood should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that it received because of its misconduct.

### FIFTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

163.    Plaintiff incorporates by reference paragraphs 1–97 as if fully set forth herein.

164.    Given the relationship between OneBlood and Plaintiff and Class members, where OneBlood became guardian of Plaintiff's and Class members' PII, OneBlood became a fiduciary by its undertaking and guardianship of the PII, to act primarily for Plaintiff and Class members, (1) for the safeguarding of Plaintiff and Class members' PII; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) OneBlood did and does store.

165.    OneBlood has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of OneBlood's relationship with them—especially to secure their PII.

166. Because of the highly sensitive nature of the PII, Plaintiff and Class members would not have entrusted Defendant, or anyone in OneBlood's position, to retain their PII had they known the reality of OneBlood's inadequate data security practices.

167. OneBlood breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect Plaintiff's and Class members' PII.

168. OneBlood also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

169. As a direct and proximate result of OneBlood's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against OneBlood and that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B. Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D. Enjoining OneBlood from further unfair and/or deceptive practices;

E.  Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.  Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.  Awarding attorneys' fees and costs, as allowed by law;

H.  Awarding prejudgment and post-judgment interest, as provided by law;

I.  Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.  Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Date: January 17, 2025

Respectfully submitted,

By: /s/Joshua R. Jacobson
**Joshua Jacobson, Esq., FBN 1002264**
478 E. Altamonte Dr., Ste. 108
Altamonte Springs, FL 32701
Phone: (407) 720-4057
Fax: (407) 612-2206
joshua@jacobsonphillips.com
eservice@jacobsonphillips.com

Raina Borrelli*
**STRAUSS BORRELLI, PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@straussborrelli.com
*Pro hac vice forthcoming*

*Attorneys for Plaintiff and Proposed Class*

31